**Demetrick D. SHEPHERD,
Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 03A05–0712–CR–720.

Court of Appeals of Indiana.

March 16, 2009.

Transfer Denied May 21, 2009.

Patricia Caress McMath, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ian McLean, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION [1]

KIRSCH, Judge.

Demetrick D. Shepherd ("Shepherd") appeals from his convictions after a jury trial of felony murder,[2] rape as a Class B

---

1. We held oral argument in this case on February 24, 2009. We commend counsel for the quality of their written and oral advocacy.

2. *See* Ind.Code § 35–42–1–1.

felony,[3] and burglary as a Class B felony.[4] Shepherd raises the following issues for our review:

I. Whether the trial court committed reversible error by admitting evidence that Shepherd had made advances toward the victim and had taken a vehicle without permission the week before the murder, in violation of Indiana Evidence Rule 404(b); and

II. Whether Shepherd's ninety-year sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Michelle Olvey ("Olvey") lived in an apartment in Columbus, Indiana with her three children. Olvey's brother, Sean Aguire ("Aguire"), lived two doors down from Olvey in the same apartment complex. Olvey would often leave her apartment door unlocked so Aguire could enter her apartment. C.P., the fourteen-year-old victim in this case, was a friend of Olvey and her children. C.P. frequently would spend the night at Olvey's apartment.

Olvey was introduced to Shepherd through Aguire. Shepherd would come over to Olvey's or Aguire's apartment to socialize. On June 22, 2007, Shepherd was at Aguire's apartment, where Olvey, C.P., and others were present. Shepherd flirted with C.P., told her she was pretty, and asked her why she did not have a boyfriend. During that exchange, Shepherd ran his fingers through C.P.'s hair. C.P. leaned away from Shepherd. Olvey became upset with Shepherd's behavior and told him that C.P. was only fourteen years old and just a kid. Olvey testified that Shepherd responded: "[O]h well, I just need some f* * *in' p* * *y." *Tr.* at 248.

Later that same evening, Shepherd entered Olvey's apartment and took her car keys without her knowledge. Olvey awoke the next morning to find that someone had used her car and had used all of the gas. Olvey went to Aguire's apartment to ask for some money for gas. Aguire told Olvey that he saw Shepherd with Olvey's car keys and that Shepherd told him that Olvey had given Shepherd permission to use the car. Olvey became upset, drove to Shepherd's home with C.P. in the car, and confronted him about taking her car. Olvey told Shepherd that she had not given him permission to use the car, and that they were no longer friends. Olvey did not see Shepherd again until trial.

The following weekend, on June 28 and 29, C.P. and a friend of Olvey's, were at Olvey's apartment. Olvey took her children upstairs to their bedroom and retired to her own. C.P. slept downstairs in an oversized chair. At approximately 3:00 a.m., Aguire went to Olvey's apartment to get something to eat. When Aguire turned on the lights, he observed C.P.'s body surrounded by a large amount of blood. Aguire ran upstairs and told his sister something was wrong with C.P. Aguire, Olvey, and Olvey's children left Olvey's apartment and went to Aguire's apartment where Aguire called the police.

Members of the Columbus City Police Department secured Olvey's apartment and observed C.P. lying face down, naked from the waist down. There was a large amount of blood in the surrounding area, and C.P. had lacerations to her face, head, neck, and chest. A pathologist confirmed that C.P. died due to multiple stab wounds.

**3.** *See* Ind.Code § 35–42–4–1(b)(3).

**4.** *See* Ind.Code § 35–43–2–1(1)(B)(i).

Police officers recovered fingerprint evidence from the sliding glass door of Olvey's apartment implicating Shepherd. Laboratory analysis later showed C.P.'s DNA on Shepherd and Shepherd's semen in C.P.'s vagina.

Shepherd first told police that he had not been in Olvey's apartment on June 29, 2007. In a subsequent interview, Shepherd told police that he killed C.P., but did not sexually assault her. During a suppression hearing held three weeks prior to trial, Shepherd recanted and said the real killer was Jonathan Adorno–Morales.

On July 2, 2007, the State charged Shepherd with felony murder. On September 7, 2007, the State amended the charging information to include one count of rape, a Class B felony, and one count of burglary, a Class B felony. The State also sought life imprisonment without parole.

Shepherd was tried in a bifurcated jury trial. At the guilt phase of the trial, Shepherd testified that on the night of June 29 he had run into a friend of his, Jonathan Adorno–Morales, who asked him for a ride somewhere, and that he and Morales went into Olvey's apartment to get her car keys. They saw a girl sleeping in a chair in the living room. Shepherd went upstairs to get the keys, and when he came back downstairs, he saw Morales standing over the girl with a knife in his hands.

Shepherd testified that Morales told the girl to take off her clothes and began messing with her. Shepherd further testified that Morales asked Shepherd if he wanted in on it, and when Shepherd started to walk away, Morales threatened to kill him if he did not have sex with the girl. Shepherd stated that he quickly had sex with her, and as he started to leave, heard a gasp. Shepherd said that he saw Morales stabbing the girl. Shepherd claimed that he and Morales left the apartment and ran down the alley. Shepherd stated

the reason why he lied when initially questioned by police was because Morales had threatened him to keep quiet about what had happened. Morales testified at trial and denied any involvement in the crimes.

At the conclusion of the guilt phase of the trial, the jury returned guilty verdicts on all three counts against Shepherd. At the conclusion of the penalty phase, the jury recommended against the sentence of life without parole. The trial court then entered judgments of conviction.

At sentencing, the trial court found that the aggravating circumstances outweighed the mitigating circumstances and sentenced Shepherd to sixty years executed for the murder conviction, fifteen years executed for the rape conviction, and fifteen years executed for the burglary conviction to be served consecutively for an aggregate sentence of ninety years executed. Shepherd now appeals.

## DISCUSSION AND DECISION

### I. Evidence of Prior Bad Acts

*Indiana Evidence Rule 404(b)*

■ Indiana Evidence Rule 404(b) provides as follows:

Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Shepherd argues that the trial court erroneously admitted improper evidence of prior bad conduct. Prior to trial, Shepherd filed a motion in limine to prevent the State from presenting evidence that: (1) Shepherd had made advances toward C.P. the week before her rape and murder; and (2) Shepherd had previously, on the same night as the advances toward C.P., gone into Olvey's apartment to take Olvey's car keys, and used her car without her permission. The trial court held a hearing on Shepherd's motion later denying the motion. The testimony subsequently was allowed at trial in the State's case-in-chief. Shepherd claims that none of that testimony was relevant to any issue at trial.

In the alternative, Shepherd argues that, even if there were a proper purpose for the admission of the evidence, the prejudicial effect of the evidence outweighed any probative value. Shepherd concludes that this bad character evidence likely confused the jury, whose job was to determine when Shepherd was telling the truth.

■■■■ The admission or exclusion of evidence is entrusted to the discretion of the trial court. *Farris v. State*, 818 N.E.2d 63, 67 (Ind.Ct.App.2004), *trans. denied.* We will reverse a trial court's decision only for an abuse of discretion. *Id.* A trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances before it. *Id.* An error in the admission of evidence is harmless unless the error affected the substantial rights of the defendant. *Wilson v. State*, 770 N.E.2d 799, 802 (Ind.2002). To determine whether an error in the admission of evidence affected the defendant's substantial rights, we must consider the probable impact the evidence had upon the jury. *Id.* "The question is not whether there is sufficient evidence to support the conviction absent the erroneously admitted evidence, but whether the evidence was likely to have had a prejudicial impact on the jury." *Camm v. State*, 812 N.E.2d 1127, 1137 (Ind.Ct.App.2004), *trans. denied.*

Assuming, without deciding, that the challenged evidence was erroneously admitted under Evidence Rule 404(b), the admission of the evidence of Shepherd's prior flirtations with the victim, no matter how vulgar, along with the evidence that Shepherd previously used Olvey's car without her permission, was clearly harmless beyond a reasonable doubt. During his direct examination, Shepherd admitted raping fourteen-year-old C.P. He also admitted committing the burglary. In previous statements, Shepherd had admitted committing the burglary and C.P.'s murder. In light of the conduct that Shepherd admitted to, the evidence of his prior flirtation with C.P. and the evidence that he had previously taken Olvey's car without permission has limited prejudicial effect. The trial court did not commit reversible error by admitting this evidence.[5]

## II. Inappropriate Sentence

■■■ "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). Under this rule, the burden is on the defendant to persuade the

---

**5.** We note that prior to our Supreme Court's opinion in *Swanson v. State*, 666 N.E.2d 397 (Ind.1996), this evidence would have come in under the doctrine of res gestae. Now, this evidence only comes in under an exception to Evidence Rule 404(b). We believe that evidence such as this illustrates the challenges presented by the elimination of the doctrine of res gestae. In the present case, the story of these crimes could not be properly told without this evidence.

appellate court that his or her sentence is inappropriate. *Childress v. State,* 848 N.E.2d 1073, 1080 (Ind.2006).

Shepherd argues that the aggregate ninety-year sentence he received for his crimes is inappropriate "for the twenty-year-old defendant who has only one prior conviction for theft." *Appellant's Br.* at 7. Shepherd acknowledges the trial court's thoughtful consideration of the proposed aggravating and mitigating circumstances, but specifically argues that the trial court erred by imposing his sentences consecutively and requests that the enhanced sentences should be ordered to run concurrently.

The trial court found the age of the victim to be an aggravating circumstance regarding both the murder and rape convictions, and that the crimes were committed during the commission of the burglary supported an enhanced sentence. The trial court noted Shepherd's "history of criminal behavior that is separate and distinct from criminal convictions." *Tr.* at 702. The trial court also noted the likelihood that Shepherd would reoffend and referenced Shepherd's assessment score. While the jury did not recommend that Shepherd receive a sentence of life without parole, *Id.* at 661, the jury did specifically find that the aggravating factors outweighed the mitigating factors, and the trial court adopted that finding. *Id.* at 703.

With regard to Shepherd's character, the trial court found Shepherd was not remorseful and lacked the ability to empathize with the victims in the case. The trial court considered Shepherd's youth, but found that its weight as a mitigating factor was offset by Shepherd's likelihood of reoffending. While acknowledging the evidence of Shepherd's less than ideal upbringing, the trial court noted that Shepherd, an adult, chose to commit crimes, in spite of his multiple contacts with the legal system. The trial court recognized that Shepherd's criminal record was "relatively minor" and "[c]ertainly not even close to the worst" that the court had seen. *Id.* at 705.

Concerning the murder conviction, the trial court found that the aggravating circumstances outweighed the mitigating circumstances, and imposed a sixty-year sentence.[6] For Shepherd's rape conviction, the trial court found that the aggravating circumstances outweighed the mitigating circumstances and imposed a fifteen-year sentence.[7] The trial court found that an aggravated sentence was appropriate for the burglary conviction and sentenced Shepherd to fifteen years executed.[8] The trial court concluded that the crimes were separate and distinct and should be imposed consecutively. *Id.* at 708.

Examining the nature of the offense, Shepherd raped and murdered a fourteen-year-old girl, stabbing her eleven times. Shepherd burglarized Olvey's home, taking advantage of his knowledge that she kept the doors to her apartment unlocked.

Looking to Shepherd's character, we note that as a juvenile Shepherd was arrested, but not punished, for illegal con-

---

6. The sentencing range for murder is an executed sentence of between forty-five years and sixty-five years, with the advisory sentence being fifty-five years. Ind.Code § 35-50-2-3.

7. The sentencing range for rape as a Class B felony is an executed sentence of between six and twenty years, with the advisory sentence being ten years. Ind.Code § 35-50-2-5.

8. The sentencing range for burglary as a Class B felony is an executed sentence of between six and twenty years, with the advisory sentence being ten years. Ind.Code § 35-50-2-5.

sumption, and was arrested for vehicle theft in Florida, but the charges against him were dropped. Shepherd was convicted of retail theft in Florida. He was also arrested for auto theft in Florida, but no charges were filed against him, because the victim was Shepherd's grandmother. Shepherd admitted to the probation officer preparing the presentence report, that he had taken other people's cars on at least four occasions, and that he has used drugs since he was fourteen years old.

We do not find that Shepherd's ninety year sentence is inappropriate in light of the nature of the offense and the character of the offender. Finally, the trial court did not err by imposing those sentences consecutively.[9]

Affirmed.

BAKER, C.J., and NAJAM, J., concur.

---

9. The State presents no argument that Shepherd's sentence should be increased. Consequently, we do not consider whether to increase Shepherd's sentence here. We note that the briefs in this matter were filed prior to our Supreme Court's decision in *McCullough v. State*, 900 N.E.2d 745 (Ind.2009).