**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 28 2012, 9:50 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**STEVEN E. RIPSTRA**
Jasper, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| ALEXANDER A. LOPEZ,      ) | |
|      ) | |
|    Appellant-Defendant,      ) | |
|      ) | |
|    vs.      ) | No. 63A04-1201-CR-35 |
|      ) | |
| STATE OF INDIANA,      ) | |
|      ) | |
|    Appellee-Plaintiff.      ) | |

### APPEAL FROM THE PIKE CIRCUIT COURT
The Honorable Jeffrey L. Biesterveld, Judge
Cause No. 63C01-1110-CM-186

**December 28, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

Alexander Lopez ("Lopez") appeals his conviction for class A misdemeanor dealing in marijuana.[1]

We affirm.

## ISSUES

1.    Whether there is sufficient evidence to support the conviction.

2.    Whether the trial court abused its discretion in admitting evidence.

3.    Whether fundamental error occurred when the State referred to Lopez's speedy trial request.

4.    Whether the trial court abused its discretion in denying Lopez's motion for leave to file a belated motion to correct error.

## FACTS

On October 2, 2011, deputies with the Pike County Sheriff's Department executed a search warrant for the Winslow residence of Ryan Herald ("Herald") after conducting several controlled drug buys.  In addition to seizing several drug-related items from the residence, deputies seized Herald's cell phone.

Later that evening, Deputy Jeff Boger ("Deputy Boger") took Herald's cell phone back to the department in order to "go through it and . . . find out more information relating to . . . the sale and purchase of drugs."  (Tr. 52).  After the phone started ringing, Deputy Boger checked the caller ID, which indicated that the caller's name was "Flaco,"

---

[1]  Ind. Code § 35-48-4-10.

2

Lopez's nickname. (Tr. 53). Without identifying himself, Deputy Boger answered the phone. Lopez, who apparently believed that he was speaking with Herald, "started off by asking for a ride . . . ." (Tr. 53). At some point in the conversation, Lopez "said he would give half an ounce . . . of marijuana" for a ride to Indianapolis. (Tr. 54). Deputy Boger "played along," and told Lopez that he could provide him with a ride in exchange for marijuana. (Tr. 55). Deputy Boger arranged to meet Lopez at Herald's residence the next morning.

The next morning, Deputy Boger and several other officers with the Pike County Sheriff's Department and the Petersburg Police Department positioned themselves "four or five houses down from" Herald's residence on County Road 300 East. (Tr. 56). Deputy Boger and Lopez telephoned "back and forth" several times. (Tr. 57). At one point, Lopez gave the phone to Joaquin Cunningham ("Cunningham"), who was driving Lopez from Evansville to Herald's residence, and Deputy Boger spoke with Cunningham. As Lopez and Cunningham drove by the officers in Cunningham's pick-up truck, Lopez mentioned the officers' presence, but Deputy Boger reassured him that "they were cool." (Tr. 80).

As Deputy Boger spoke with Lopez, Cunningham and Lopez drove "southbound past" the officers, "[w]ent out of sight briefly," and then passed the officers again. (Tr. 60). Because officers had discovered an AK-47 during the search of Herald's residence and did not know whether the truck's occupants were armed, they initiated a stop of Cunningham's vehicle.

3

Officer Chad Tharp ("Officer Tharp") ordered the occupants to put up their hands and exit the vehicle. Cunningham "[i]mmediately" put up his hands and exited the vehicle in accordance with the officer's orders. (Tr. 87). Lopez started to comply with Officer Tharp's commands but lowered his hands as he looked over his shoulder toward the officers. Lopez then reached down and leaned over toward the center of the truck's cab before finally complying with Officer Tharp's orders.

After the officers read Cunningham and Lopez their *Miranda* rights, Cunningham consented to a search of his vehicle. Cunningham also volunteered that he had marijuana in his pocket. A search of Cunningham did reveal "a small bag of marijuana in his pocket." (Tr. 156). Once the officers had handcuffed and seated Cunningham and Lopez, Officer Tharp overheard Lopez tell Cunningham that "he couldn't go down for that . . . ." (Tr. 139).

During a search of the truck, Deputy Dallas Killian ("Deputy Killian") located a baggie "on the transmission covering or hump . . . between the passenger and driver" sides. (Tr. 159). The baggie contained fourteen (14) grams, or one-half (1/2) ounce, of marijuana. Cunningham denied knowing anything about the marijuana discovered in the truck. Officers also recovered a bag belonging to Lopez in the cab.

After placing Lopez and Cunningham under arrest, deputies transported them to the Pike County Jail, where they were housed together. On October 4, 2011, Cunningham made a voluntary statement, wherein he represented the following:

4

> I . . . am a witness that my cousin [Lopez] had no poss [sic] of marijuana or intent to sell. He was simply trying to get a ride to Indianapolis to get tires for his truck. The marijuana that was found in th[e] truck was in my possession because the truck was mine, [e]ven tho [sic] I was unaware of it being in there. [Lopez] had no awareness that the marijuana was in there as well.

(Lopez's Ex. B).

On October 5, 2011, the State charged Lopez with Count 1, class A misdemeanor possession of marijuana, and Count 2, class A misdemeanor possessing marijuana with the intent to deliver. That same day, Rebecca Burns ("Burns"), Cunningham's mother, spoke with Lopez on the telephone while Lopez was in jail. During the conversation, which was recorded and later transcribed, Lopez offered Burns money if Burns would telephone the prosecutor and try to get the charges against Lopez dropped. Lopez told Burns to represent that Lopez was her nephew and that he should be released because Cunningham had made a voluntary statement. Lopez told Burns that "they ain't [sic] going to do nothing [sic] to" Cunningham for what would be a misdemeanor conviction whereas Lopez would get a harsher sentence because he was on parole at the time for "[d]rug dealing and trafficking cocaine . . . ." (State's Ex. 4 at 19).

Subsequently, while Lopez was in court for a pre-trial hearing, Deputy John Palmer ("Deputy Palmer") overheard Lopez tell a bailiff that "all [he] had was a small bag of marijuana and they're trying to make a big deal of it." (Tr. 120). On another occasion, Deputy Palmer overheard Lopez say that "[a]ll [he] had was a small bag of

5

marijuana." (Tr. 121). Lopez made this statement after meeting with the prosecutor and his counsel.

The trial court commenced a two-day jury trial on December 12, 2011. During the trial, Cunningham testified that he had purchased the marijuana found in the truck approximately three days prior to being stopped, but he had forgotten "where [he] put it." (Tr. 297). Cunningham further testified that he usually purchased his marijuana from a "Michael Smith," but he did not know "for sure" the name of the person from whom he purchased the marijuana found in the truck. (Tr. 280). He also did not know what the person looked like or where he had purchased the marijuana. He testified that he usually purchased only "very little sacks" of marijuana and seldom purchased "halves and ounces . . . ." (Tr. 281).

Also during the trial, the trial court, over Lopez's objections, admitted into evidence the recording of the telephone call between Lopez and Burns and the deposition testimony of Deputy Don Burkhart ("Deputy Burkhart"), who was unavailable for trial. Deputy Burkhart testified that he had observed Lopez and Cunningham having a conversation, "being led primarily by" Lopez, in the jail's outdoor recreation area shortly before Cunningham requested a voluntary statement form from the deputies. (State's Ex. 3 at 8).

On the morning of the second day of the trial, the State advised the trial court and Lopez's counsel that as Deputy Killian was leading Lopez out of the courtroom following the prior day's proceedings, the jurors also were leaving the courtroom "and some of

6

them may have seen [Lopez] in handcuffs." (Tr. 208). The State reported that Lopez then

> had an outburst and attempted to draw the fact that he was in handcuffs to the attention of more jurors by raising his hands up and . . . gesturing with the handcuffs and . . . saying words to the effect of: See. They've got me in handcuffs. See. They've got me in handcuffs.

(Tr. 208-09). Deputy Killian hurried Lopez into an elevator and went straight to the first floor. Upon exiting the elevator, however, Lopez noticed that some of the jurors had reached the first floor, and he again "attempted to bring the fact that he was handcuffed to the attention of the jurors" before being "forcibly removed" from the courthouse by Deputy Killian. (Tr. 209).

Outside the presence of the jury and after consulting with Lopez, Lopez's counsel advised the trial court that Lopez was merely upset because he was handcuffed despite already being restrained by a knee brace. Lopez's counsel then sought a mistrial "due to the fact that there was knowledge [Lopez] had a knee brace on. It was a restraining device used by the officers . . . [a]nd there was no need for the handcuffs . . . ." (Tr. 212-12).

In order to determine whether there was any prejudice, the trial court voir dired the jurors regarding what they observed or heard after leaving the courtroom. Juror #1 saw nothing. Juror #2 "wasn't paying attention" and did not know whether Lopez was handcuffed or not. (Tr. 221). Juror #3 did not see Lopez wearing handcuffs but heard Lopez say, "you're not suppose [sic] to see me in handcuffs." (Tr. 223). Juror #4 did

7

observe Lopez wearing handcuffs but "assumed he would be in handcuffs going back and forth from [the courtroom] to the jail." (Tr. 226). Juror #5 observed Lopez being placed in a police vehicle but "didn't pay that much attention" to whether he was handcuffed. (Tr. 230). Juror #6 denied seeing Lopez in handcuffs. The alternate juror "didn't pay attention" to Lopez as they were leaving the courtroom. (Tr. 236). All of the jurors indicated that they could be fair and impartial and nothing that they saw or heard would affect the presumption of innocence. The trial court therefore denied Lopez's motion for mistrial.

The jury found Lopez guilty on both counts. At the sentencing hearing, the trial court merged Count 1 with Count 2 and imposed a 365-day sentence to be served in the Pike County Security Center. The trial court further ordered that the sentence run consecutively to the sentences imposed under three other cause numbers.

Lopez, pro se, filed a notice of appeal on January 24, 2012. On February 6, 2012, Lopez, by counsel, filed an amended notice of appeal. On April 5, 2012, the Court Reporter for the Pike Circuit Court (the "Court Reporter") filed the trial transcript.

On April 25, 2012, Lopez filed a motion for leave to file a belated motion to correct error pursuant to Indiana Post-Conviction Rule 2 after his appellate counsel discovered that State's Exhibits 3 and 4 had not been "transcribed in the trial Transcript[.]" (App. 178). Specifically, Lopez sought "to hold an evidentiary hearing, in order to make a complete record for appeal; which hearing may likely consist of

8

testimony from police officers present during the 'handcuff' incident, along with the seven (7) jurors . . . ." (App. 179).

On May 23, 2012, Lopez also filed a motion with this Court, seeking to stay and remand his appeal to the trial court, or in the alternative, for an extension of time to file his appellant's brief. This Court ordered the Court Reporter to transcribe the two audio exhibits, to file a supplemental transcript, and to file an amended notice of completion of the transcript, thirty (30) days after which Lopez's brief would be due. On May 18 and June 18, 2012, the Court Reporter filed notice of the filing of the transcript of State's Exhibit 3 and State's Exhibit 4, respectively.

At some point, the trial court held a hearing on Lopez's motion, and on June 18, 2012, the trial court denied the motion. Specifically, the court explained that it denied the motion because Lopez's direct appeal was pending in this Court. Lopez now appeals his conviction as well as the denial of his motion.

## DECISION

1. Sufficiency of the Evidence

Lopez asserts that the evidence is insufficient to support his conviction for dealing in marijuana.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling.

9

Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (quotations and citations omitted).

To convict Lopez of class A misdemeanor possession of marijuana with intent to deliver, the State was required to prove that he knowingly or intentionally possessed thirty (30) grams or less of marijuana with the intent to deliver it to another person. *See* I.C. § 35-48-4-10.

This court has long recognized that a conviction for possession of contraband may be founded upon actual or constructive possession. Constructive possession is established by showing that the defendant has the intent and capability to maintain dominion and control over the contraband.

In cases where the accused has exclusive possession of the premises on which the contraband is found, an inference is permitted that he or she knew of the presence of contraband and was capable of controlling it. However, when possession of the premises is non-exclusive, the inference is not permitted absent some additional circumstances indicating knowledge of the presence of the contraband and the ability to control it. Among the recognized "additional circumstances" are: (1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) a drug manufacturing setting; (4) proximity of the defendant to the contraband; (5) contraband is in plain view; and (6) location of the contraband is in close proximity to items owned by the defendant.

*Holmes v. State*, 785 N.E.2d 658, 660-61 (Ind. Ct. App. 2003) (citations omitted).

It is undisputed that Lopez did not exercise exclusive control of the vehicle. Thus, the State was required to present evidence of additional circumstances indicating his knowledge of the presence of the marijuana and his ability to control it.

10

In this regard, the State presented evidence that Lopez made several incriminating statements. Namely, he offered one-half ounce of marijuana to Deputy Boger in exchange for a ride to Indianapolis. Officers later found one-half ounce of marijuana in the truck. Lopez also made statements about the amount of marijuana found in the truck, stating that he only had a "small" amount. (Tr. 120, 121).

The State also presented evidence that Lopez made furtive gestures after being stopped by the police. Officers testified that despite numerous commands to put up his hands, Lopez lowered them, out of the officers' sight, as he leaned down and toward the center of the truck. Deputy Killian discovered the bag of marijuana in plain view on the floor of the truck, in the area where Lopez had made his furtive movements and in an area to which Lopez had access. Officers also discovered items belonging to Lopez in the cab of the truck.

Contrary to Lopez's assertion, this case is not analogous to *Brent v. State*, 957 N.E.2d 648 (Ind. Ct. App. 2011), *trans. denied*. In that case, this court found insufficient evidence of constructive possession of marijuana, where the suspicious behavior was attributable to the driver, not Brent, the passenger. Here, however, suspicious behavior was also attributable to passenger Lopez.

Here, the State presented evidence to support Lopez's conviction for possession of marijuana with the intent to deliver it to another person. Indiana Code § 35-48-1-11 defines "delivery" as meaning the actual or constructive transfer of a controlled substance from one person to another. Because intent is a mental state, triers of fact generally must

11

resort to the reasonable inferences arising from the surrounding circumstances to determine whether the requisite intent exists. *Love v. State*, 741 N.E.2d 789, 792 (Ind. Ct. App. 2001). Circumstantial evidence showing possession with intent to deliver may support a conviction. *Id.*

In this case, the State presented evidence that Lopez, believing he was speaking to Herald, offered Deputy Boger one-half ounce of marijuana in exchange for a ride to Indianapolis. Deputy Boger agreed and arranged to meet Lopez the next day. The following day, Lopez spoke with Deputy Boger on the phone, intending to meet him as arranged. When Deputy Killian searched the truck in which Lopez was riding, he discovered one-half ounce of marijuana in the truck. Given the evidence, the jury could reasonably infer that Lopez intended to deliver the marijuana to Deputy Boger. We decline Lopez's invitation to reweigh the evidence or judge the credibility of the witnesses.

2. Admission of Evidence

Lopez also asserts that the trial court abused its discretion in admitting the recording of the telephone conversation between Lopez and Burns wherein Lopez briefly mentioned his parole three times, referred to his prior period of incarceration twice, and referred to his prior conviction once. Specifically, Lopez argues that the evidence was irrelevant; prejudicial; and prohibited by Evidence Rule 404(b), which provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."

12

Generally, a trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion. *Hape v. State*, 903 N.E.2d 977, 991 (Ind. Ct. App. 2009), *trans. denied*. We will reverse a trial court's decision only if it clearly against the logic and effect of the facts and circumstances of the case. *Id.* Even if the decision was an abuse of discretion, we will not reverse if the admission of evidence constituted harmless error. *Id.*

Here, we need not decide whether the trial court improperly admitted the conversation because we conclude any error to be harmless.

> No error in the admission of evidence is grounds for setting aside a conviction unless such erroneous admission appears inconsistent with substantial justice or affects the substantial rights of the parties. The improper admission of evidence is harmless error when the conviction is supported by such substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction.

*Lafayette v. State*, 917 N.E.2d 660, 668 (Ind. 2009) (internal citations omitted).

A reversal may be obtained only if the record as a whole discloses that the erroneously admitted evidence was likely to have had a prejudicial impact upon the mind of the average juror and thereby contributed to the verdict. *Granger v. State,* 946 N.E.2d 1209, 1217 (Ind. Ct. App. 2011). Thus, the question is not whether there is sufficient evidence to support the conviction absent the erroneously admitted evidence, but whether the evidence was likely to have had a prejudicial impact on the jury. *Shepherd v. State*, 902 N.E.2d 360, 364 (Ind. Ct. App. 2009), *trans. denied*.

Here, Deputy Boger testified that Lopez offered him one-half ounce of marijuana in exchange for a ride to Indianapolis. The State presented evidence that Lopez possessed one-half ounce of marijuana on the day and at the place that he and Deputy Boger had arranged to meet. The State also presented evidence that Lopez made incriminating statements.

As to the recording, the jury heard approximately fifteen minutes of a telephone conversation between Lopez and Burns wherein Lopez offered money if Burns would telephone the prosecutor and the judge and tell them to release him because Cunningham admitted that the marijuana was in his possession. Also in the recording, Lopez briefly mentioned his parole three times, referred to his prior period of incarceration twice, and referred to his prior conviction once. As to the jury hearing "themselves characterized as, in essence and paraphrasing, 'country redneck gringos,'" (Lopez's Br. at 13), it was Burns, not Lopez, who stated that Lopez and Cunningham were in "redneck" and "gringo" territory. (State's Ex. 4 at 10, 11).

In light of the evidence, particularly Lopez's incriminating statements, we cannot say that admitting the recording had a prejudicial impact on the jury. We therefore find that any error in admitting the evidence must be disregarded as harmless.

3. Fundamental Error

During defense counsel's cross examination of Deputy Boger, defense counsel implied that the State was behind schedule on discovery. The State objected and explained to the trial court that the State was under a time constraint because of the

14

defendant's assertion of his right to a speedy trial. Because Lopez did not object to the State's reference to the assertion of his right to a speedy trial at trial, Lopez now contends that this reference constituted fundamental error.

Fundamental error is a substantial, blatant violation of basic principles of due process that render the trial unfair to the defendant. *Stafford v. State*, 736 N.E.2d 326, 332 (Ind. Ct. App. 2000), *trans. denied*. The fundamental error doctrine is extremely narrow. *Wooden v. State*, 757 N.E.2d 212, 215 (Ind. Ct. App. 2000), *trans. denied*. In order to qualify as fundamental error, the error must be so prejudicial to the rights of the defendant as to make a fair trial impossible. *Mitchell v. State*, 726 N.E.2d 1228 (Ind. 2000), *abrogated on other grounds by Beattie v. State*, 924 N.E.2d 643 (Ind. 2012).

Here, Lopez's cursory one-page argument fails to allege how he was prejudiced by this comment and how it made a fair trial impossible. Further, our review of the transcript reveals no such prejudice. We find no fundamental error.

4.    Motion to Correct Error

Lopez contends that the trial court abused its discretion in denying his motion for leave to file a belated motion to correct error. Lopez argues that he should be allowed "to make a better record with respect to the juror examination conducted on th[e] issue" of whether he was prejudiced by being in the jurors' presence while in handcuffs. Lopez's Br. at 17.

Lopez's argument fails for several reasons. First, the State correctly points out that this Court acquired jurisdiction when the notice of completion of clerk's record was

15

filed on February 6, 2012. *See* Ind. Appellate Rule 8. The appeal of a conviction has the effect of transferring jurisdiction of the case to the appellate court and suspending any further trial court jurisdiction over the action. *Bradley v. State*, 649 N.E.2d 100, 106 (Ind. 1995). The trial court therefore lacked the authority to rule on Lopez's motion and properly denied the motion on that basis.

Second, the State also correctly points out that Indiana Post-Conviction Relief Rule 2(2) is not the proper avenue of relief for Lopez to pursue. Specifically, pursuant to Rule 2(2), an eligible defendant who is entitled to relief on a belated motion to correct error is a defendant who, but for the defendant's failure to do so timely, would have the right to challenge on direct appeal a conviction or sentence after a trial or plea of guilty by filing a notice of appeal. Here, however, Lopez timely filed a notice of appeal. He is therefore not eligible to proceed under this rule.

Lastly, even if the trial court had jurisdiction to rule on the motion, and Lopez was eligible to proceed under Rule 2(2), his argument would still fail. This Court reviews the denial of a belated motion to correct error for an abuse of discretion. *Moshenek v. State*, 868 N.E.2d 419, 422 (Ind. 2007). Our review of the evidence reveals that the situation regarding the jurors seeing Lopez in handcuffs was promptly brought to the attention of the trial court, and the jurors were individually questioned about what they had seen. They were also asked whether what they had seen was in any way going to influence them to believe that Lopez's guilt was a foregone conclusion, and whether they had formed at that point any conclusion as to Lopez's guilt or innocence. All seven jurors

16

stated they would be fair and impartial. Although Lopez had the opportunity to question officers about the incident, he failed to call them to the stand. Lopez provides no compelling reason for this Court to allow him to supplement the trial record with additional evidence. This is particularly true given that Lopez is, in part, responsible for calling jurors' attention to the fact that he was handcuffed. *See Wright v. State*, 828 N.E.2d 904 (Ind. 2005) (explaining that under the invited error doctrine, a party may not take advantage of an error that he commits, invites, or which is the natural consequence of his own neglect or misconduct). We find no error.

Affirmed.

FRIEDLANDER, J., and BROWN, J., concur.