## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 09 2020, 7:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. Mackenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Daniel R. Collar II,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

April 9, 2020

Court of Appeals Case No.
19A-CR-1632

Appeal from the Noble Circuit Court

The Honorable Michael J. Kramer, Judge

Trial Court Cause No.
57C01-1902-F5-8

**May, Judge.**

[1] Daniel R. Collar II appeals his conviction of Level 5 felony intimidation.[1] Collar raises three issues on appeal, which we restate as: (1) whether Collar was deprived of his right to a speedy trial under the Sixth Amendment to the United States Constitution and Article I, Section 12 of the Indiana Constitution; (2) whether the trial court abused its discretion by admitting security video evidence as certified business records under Indiana Evidence Rule 802(6); and (3) whether a sentence of 12 years is inappropriate in light of the nature of the offense and character of the offender. We affirm.

# Facts and Procedural History

[2] On January 17, 2019, an affidavit to support a charge of intimidation against Collar was filed by a Ligonier City Police Department officer. The affidavit stated:

> [On December 24, 2018,] [Collar] hid and waited masked up for [Timothy Swank] to exit [the Lassos Handy Dandy] Gas station and then walked up behind [Swank] and made a verbal threat and drew a deadly weapon on [Swank], which constitutes a communication of a threat to another person with the intent [that: (1) the other person engage in conduct against the other person's will; and (2) the other person be placed in fear for a prior lawful act] . . . .
>
> [Collar] fled the scene and has been unable to be located. . . .

---

[1] Ind. Code § 35-45-2-1(a)(1) & (b)(2)(A).

> [Collar] has done this on a prior a acation [sic] without involving a deadly weapon, but [Swank] didn't report the crime. [Swank] state [sic] that [Collar] believes [Swank] is speaking with [Collar's] ex-girlfriend. . . .

(App. Vol. II at 17-8.) Based thereon, on February 20, 2019, the State charged Collar with Level 5 felony intimidation.

[3] On March 7, 2019, Collar moved for a speedy trial, *pro se*. On March 11, 2019, a public defender accepted appointment and filed an appearance. On April 8, 2019, the public defender renewed Collar's motion for a speedy trial during the pre-trial hearing. On April 26, 2019, the State alleged Collar was a habitual criminal offender. On April 29, 2019, the public defender confirmed with the court that Collar was to receive a speedy trial. On May 16, 2019, Collar filed a letter *pro se* requesting charges be dismissed on the grounds that he did not receive a fast and speedy trial. The court forwarded that letter to the public defender.

[4] On May 21, 2019, the court held day one of Collar's bifurcated jury trial, and the public defender asked the court to rule on Collar's motion to dismiss. The court denied Collar's motion because the earliest possible date for Collar's trial on the court's calendar was May 21, 2019. During the trial, the State moved to admit State's Exhibits 1 and 4 through 82, which allegedly depicted security video recordings from Lassos Handy Dandy gas station on December 24, 2018. Collar objected, but the judge overruled the objection and admitted the exhibits.

Later on, the State called Melissa Cruz—a Lassos Handy Dandy gas station employee, who was working when the incident occurred—to testify. Cruz testified that the victim came into the gas station "freaking out that somebody had pulled a knife on him in the parking lot." (Tr. Vol. II at 146). On May 22, 2019, the jury returned a guilty verdict for Level 5 felony intimidation. During the sentence enhancement proceeding, the jury also determined that Collar was a habitual offender[2] and the trial court adjudicated him as such. On June 24, 2019, the trial court sentenced Collar to twelve years in the Indiana Department of Correction, with one hundred and ten days of credit for time served.

# Discussion and Decision

## 1. Speedy Trial

Collar argues the trial court erroneously deprived him of his guaranteed right to a speedy trial. The Sixth Amendment to the United States Constitution and Article 1, Section 12 of the Indiana Constitution guarantee an accused's right to a speedy trial. *Dean v. State*, 901 N.E.2d 648, 652 (Ind. Ct. App. 2009), *trans. denied*. The provisions of Indiana Criminal Rule 4 implement the defendant's speedy trial right by establishing deadlines by which trials must be held. *Id*. Criminal Rule 4 places an "affirmative duty" on the State to bring a defendant to trial. *Cundiff v. State*, 967 N.E.2d 1026, 1028 (Ind. 2012). However, "the

---

[2] On appeal, Collar does not challenge the habitual offender adjudication.

purpose of Criminal Rule 4 is not to provide defendants with a technical means to avoid trial but rather to assure speedy trials." *Id*.

[7] Subsection (B)(1) of Criminal Rule 4 provides:

> If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar. Provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as set forth in subdivision (A) of this rule. Provided further, that a trial court may take note of congestion or an emergency without the necessity of a motion, and upon so finding may order a continuance. Any continuance granted due to a congested calendar or emergency shall be reduced to an order, which order shall also set the case for trial within a reasonable time.

Thus, "in order for the meaning of the rule not to be eviscerated, it is essential that courts honor requests made for speedy trials by scheduling trial dates within the time prescribed by the rule." *McKay v. State*, 714 N.E.2d 1182, 1188 (Ind. Ct. App. 1999). Our Indiana Supreme Court has referred to this rule as a requirement that speedy trial motions receive "particularized priority treatment." *Clark v. State*, 659 N.E.2d 548, 551 (Ind. 1995). A trial judge does not have to "wipe his or her calendar clean, or jam a trial into an opening in a schedule or courtroom that lacks the space, time, and resources to accommodate it." *Austin v. State*, 997 N.E.2d 1027, 1041 (Ind. Ct. App. 2013).

"They must, however, be mindful of their calendar and the seventy-day window and exercise all reasonable diligence to preserve the defendant's right to a speedy trial." *Id.*

[8] Here, Collar moved for a speedy trial on March 7, 2019. The seventieth day would have been May 16, 2019. However, the earliest possible date for the court was May 21, 2019, five days after the deadline set forth in Criminal Rule 4(B).[3] The basis for Collar's argument is that "the trial court failed to reduce to a written order its continuance of [his] trial outside the 70-day period." (App. Br. at 22.) However, the trial court noted that May 21 was the first available date it could try Collar's case. (Tr. Vol. II at 16.) Further, the transcript indicates that: (1) counsel[4] and the court had conflicts on several days before May 16; (2) everyone was trying to accommodate Collar's request for a speedy trial; and (3) May 21 was the earliest possible date when all the witnesses were there. (Tr. Vol. II at 15; Tr. Vol. II at 20; Tr. Vol. II at 36.) The trial court's decision to set Collar's trial beyond the seventy-day speedy trial window was not clearly erroneous. *See Austin v. State*, 997 N.E.2d 1027, 1042-43 (Ind. 2013) ("although the trial court here did not issue a written order further explaining its finding of congestion, the transcript of the pre-trial conference indicates that several circumstances supported its determination").[5]

---

[3] We note that two of those days fell on the weekend.

[4] In the transcript, defense counsel does not state which counsel had conflicts during the weeks before May 16. (*See* Tr. Vol. II at 15.)

[5] While we hold the trial court here did not err, we remind the trial court to follow the requirements of Criminal Rule 4 in the future.

## 2. Admission of the Security Video Evidence

Collar argues the trial court abused its discretion when it overruled his objection to the admission of the security video evidence. The trial court's ruling on the admission or exclusion of evidence is reviewed for abuse of discretion. *Cherry v. State*, 57 N.E.3d 867, 875 (Ind. Ct. App. 2016), *trans. denied*. An abuse of discretion occurs if the trial court misinterpreted the law or if its decision was clearly against the logic and effect of the facts and circumstances before it. *Pavlovich v. State*, 6 N.E.3d 969, 975 (Ind. Ct. App. 2014), *trans. denied*. Relevant evidence is admissible unless it is hearsay. Ind. Evid. Rule 802. Hearsay is a statement that: (1) is not made by the declarant while testifying at the trial or hearing; and (2) is offered in evidence to prove the truth of the matter asserted. Ind. Evid. Rule 801.

"[E]rrors in the admission of evidence are to be disregarded unless they affect the substantial rights of a party." *Hoglund v. State*, 962 N.E.2d 1230, 1238 (Ind. 2012), *reh'g denied*. To determine whether an error in the admission of evidence affected the defendant's substantial rights, we consider the probable impact the evidence had on the jury. *Shepherd v. State*, 902 N.E.2d 360, 364 (Ind. Ct. App. 2009), *trans. denied*. The question is not whether there is sufficient evidence to support the conviction absent the erroneously admitted evidence, but whether the inadmissible evidence was likely to have had a prejudicial impact on the jury. *Id.*

[11]     After asking Lassos Handy Dandy's loss prevention specialist, Sawyer Blevins, a number of authenticating questions, the State moved to admit State's Exhibits 1 and 4 through 82 which allegedly depicted the security recordings that the store made on December 24, 2018.  According to Indiana Evidence Rule 803(6), a record—of an act, event, condition, opinion, or diagnosis—is not inadmissible if:

> (A) [T]he record was made at or near the time by—or from information transmitted by—someone with knowledge;
> (B) [T]he record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) [M]aking the record was a regular practice of that activity;
> (D) [A]ll these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902 (11)[6] [] or with a statute permitting certification; and
> (E) [N]either the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

[12]     Before the trial court admitted the exhibits proffered by the State, Collar's counsel requested permission to ask preliminary questions:

> [Collar]: Uh, Mr. Blevins you didn't design the video system did you?
> [Witness]: No.
> [Collar]: Uh, did you install it?
> [Witness]: No.
> [Collar]: Uh, but you uh, did have a look at this time period on Christmas Eve from the actual uh, DVR itself?

---

[6] *See* Ind. R. Evid. 902(11) (stating "certified domestic records of a regularly conducted activity" are self-authenticating meaning "they require no extrinsic evidence of authenticity in order to be admitted" "unless the source of information indicate a lack of trustworthiness…").

[Witness]: Just the burns.
[Collar]: Just the burns?
[Witness]: Yes.
[Collar]: So you don't know if the burns are fair and accurate copies of what was recorded on the DVR is that right?
[Witness]: Can you rephrase that?
[Collar]: Sure; when someone asks you uh, whether or not you had a recording device you went and looked at the DVR itself in terms of what was recorded during that time period?
[Witness]: Huh-uh.
[Collar]: You did not?
[Witness]: My supervisor was the one who burned it.
[Collar]: Okay so you didn't burn it and you didn't compare it burnt [sic] in the actual recording is that right?
[Witness]: No.

(Tr. Vol. II at 109-10.)  Based thereon, Collar's counsel argued no adequate foundation was laid, and the trial court agreed.

[13]     The State again attempted to lay foundation for admission by questioning whether maintaining the records was a regular practice of Lassos Handy Dandy's business, to which Collar's counsel objected:

> [State]: Your honor if [sic] may just [sic] a couple omitted questions first of all as a loss prevention officer uh, you are responsible, you and your supervisor ar [sic] responsible for maintaining the records from these, from there (indiscernible) is that right?
> [Witness]: Yes we are the keeper of the records.
> [State]: You are the keeper of records and this is a record that is maintained within the course of you [sic] business?
> [Witness]: Yes.
> [State]: And these are records that were developed uh, as part of your course of business uh, on that December 24th 2018?
> [Witness]: Yes.
> [State]: And you contemporaneously reviewed that footage uh, with your supervisor is that right?
> [Witness]: Yes.

[State]: Alright um, and uh, with that your honor it's a business records exception if there's any hear say [sic] issue to it um, and uh, so I believe that there's been a foundation laid that these are [sic] continue within the business records for that date on December 24ᵗʰ 2018 from their records as a business.

[Collar]: My objection uh, isn't related to the business records acceptation [sic] it's rather um, he's asking him to, the State is asking this witness to vouch for uh, the authenticity of the burn as it relates to the actual recording itself; based upon my questioning on [sic] Mr. Blevins I don't believe he's done both.

[Court]: I will over rule [sic] the objection and admit the exhibits.

*****

[Collar]: Judge can, so I don't have to interrupt again uh, can you show this as a continuing objection?

[Court]: I'll show the continuing objection to the exhibits.

(*Id*. at 110-11.)

Collar asserts the exhibits were inadmissible hearsay because they were not authenticated as required. Unless hearsay falls into one of a number of exceptions, it is inadmissible at trial.[7] Evid. Rule 802. As noted in its argument before the trial court, the State claimed the exhibits fell into one of the hearsay exceptions, specifically that they were records of a regularly conducted activity. Blevins testified that the burned disc was an accurate depiction of the store on December 24, 2018. However, Collar's issue is that Blevins never testified that he saw the original footage. Instead, he answered in the negative when Collar's counsel asked "Okay so you didn't burn it and you didn't compare it burnt [sic]

---

[7] *See* Ind. Evidence Rule 803-04 (hearsay exceptions include records of regularly conducted activity, absence of a record of a regularly conducted activity, family records, judgment of a previous conviction, former testimony, and statement against interest).

in the actual recording is that right?" (Tr. Vol. II at 110), and he testified that he looked at "[j]ust the burns." (*Id*. at 109.) Blevins testified that his supervisor watched the original footage and burned it onto a disc. For those reasons, Collar argues the State failed to authenticate the burned discs. We disagree.

[15] Blevins' testimony reveals that: (A) the burned discs were made by someone with knowledge, i.e., his supervisor; (B) the burned discs were kept in the course of Lassos Handy Dandy's business;[8] (C) making the discs was a regular part of his role as a loss prevention officer; and (D) conditions in (A)-(C) were shown by a qualified witness's testimony, i.e., Blevins' testimony. Finally, any lack of trustworthiness was nullified because Blevins—Lassos Handy Dandy's loss prevention officer—authenticated the burned discs that were prepared as part of Lassos Handy Dandy's business conduct. Thus, we conclude that Blevins' testimony meets all the requirements for admission of the burned discs as business records under Indiana Evidence Rule 803(6). *See Rolland v. State*, 851 N.E.2d 1042, 1045 (Ind. Ct. App. 2006) (the proponent of a business records exhibit exception "may authenticate it by calling a witness who has a functional understanding of the record keeping process of the business with

---

[8] [State]: And as it relates to those discs um, how do you know that you've looked at those discs?

[Witness]: Um, my signature's on them or my initial.

[State]: So you reviewed it [and] marked it [with] an initial?

[Witness]: Yes.

(Tr. Vol. II at 108).

respect to the specific entry, transaction, or declaration contained in the document").

# 3. Inappropriate Sentence

[16] Collar asserts his sentence is inappropriate. Under Indiana Appellate Rule 7(B), we may revise a sentence if, after due consideration of the trial court's decision, we determine the sentence is inappropriate in light of the nature of the offense and the character of the offender. *Adams v. State*, 120 N.E.3d 1058, 1064 (Ind. Ct. App. 2019). We consider aggravating, mitigating, and any other factors appearing in the record. *Johnson v. State*, 986 N.E.2d 852, 856 (Ind. Ct. App. 2013). Our goal is to decide whether the appellant's sentence is inappropriate, not whether some other sentence would be more appropriate. *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012), *reh'g denied*. Powell bears the burden of demonstrating his sentence is inappropriate. *See Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006) ("defendant must persuade the appellate court that his or her sentence has met this inappropriateness standard of review").

[17] When considering the nature of the offense, we start by looking at the advisory sentence to determine the appropriateness of a sentence. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g* 875 N.E.2d 218 (Ind. 2007). The sentencing range for a Level 5 felony is "a fixed term of between one (1) and six (6) years, with the advisory sentence being three (3) years." Ind. Code § 35-50-2-6(b). If a person convicted of a level 5 felony is found to be a habitual offender, the court shall sentence said person "to an additional fixed term that is

between two (2) years and six (6) years." Ind. Code. § 35-50-2-8(i)(2). Collar was sentenced to an aggregate sentence of twelve (12) years which he contends is inappropriate because: (1) Collar's motivation was "to threaten Swank;" (2) Swank was not harmed; (3) no evidence of monetary harm arose from the offense;" and (4) Collar was under the influence of illegal drugs at the time of the offense. (Appellant Br. at 37.)

[18] Collar not only laid in wait for Swank to exit the gas station, but he drew a knife once he had the opportunity to approach Swank. He states his motivation was to threaten Swank which is not only against the law, but an unauthorized reason to stop the victim from willfully engaging in conduct that is not against the law. Furthermore, we refuse to make light of Collar's offense just because Swank was not harmed and no monetary harm arose from the offense. As the evidence points out, this was not the first time Collar threatened the victim. The difference this time around is that Collar decided to aggravate the threat by drawing a knife which in turn caused a frightened Swank to run back into the gas station and ask Cruz to call the police. We are not persuaded by Collar's argument that he was under the influence of illegal drugs because this was not the first time he threatened the victim. For those reasons, the sentence is not inappropriate in light of the nature of Collar's crime. *See Sandleben v. State*, 29 N.E.3d 126, 137 (Ind. Ct. App. 2015) (sentence not inappropriate when defendant, "on two different occasions, closely followed [victim] section by section and aisle by aisle through a store, surreptitiously videotaping her as he followed her and causing her to feel scared and nervous"), *trans. denied*.

[19] When considering the character of the offender, one relevant fact is the defendant's criminal history. *Johnson*, 986 N.E.2d at 857. The significance of criminal history varies based on the gravity, nature, and number of prior offenses in relation to the current offense. *Id.* Powell's criminal history consists of: (1) misdemeanors such as minor consuming alcohol; refusal to provide identity; resisting law enforcement; battery resulting in bodily injury; illegal possession of an alcoholic beverage; criminal mischief; possession of marijuana; operating a vehicle with an ACE of .15 or more; disorderly conduct; and public intoxication; (2) felonies such as attempted murder; attempted robbery; possession of a controlled substance; residential entry; and burglary; (3) probation revocations; (4) work release violation; and (5) failures to appear.[9]

[20] Collar argues his "prior offenses largely were chronologically distant" and less serious than his intimidation conviction. (Appellant's Br. at 39.) However, his prior offenses did not stop him from committing the offense at issue nor help him advance his argument about his "good" character. It does not help that three weeks after intimidating the victim, Collar was charged with Class A misdemeanor driving while suspended.[10] Those are not the actions of someone who thought about how his "children would suffer from his lengthy sentence." (Id. at 38.) Given Powell's extensive criminal history and his actions, we cannot say the sentence is inappropriate for his character. See Rasnick v. State, 2

---

[9] We note that approximately three weeks after Collar threatened the victim, Collar was charged with Class A misdemeanor driving while suspended. (App. Vol. II at 127).

[10] Ind. Code § 9-24-19-2.

N.E.3d 17, 29 (Ind. Ct. App. 2013) (defendant's sentence not inappropriate when defendant's criminal history and the facts in the case "strongly support the trial court's sentencing judgment"), trans. denied.

# Conclusion

We conclude the May 21, 2019, trial date did not violate Collar's right to a speedy trial, as the trial court scheduled the trial on the earliest possible date due to court congestion. Additionally, the trial court did not abuse its discretion when it admitted State's Exhibits 1 and 4 through 82. Finally, Collar's sentence is not inappropriate based on the nature of the offense and his character. Accordingly, we affirm.

Affirmed.

Crone, J., and Pyle, J., concur.